UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ECF Case

HUGHES CONTRACTING INDUSTRIES, INC.,

Civil Action No. 08 CIV 10075 (LBS)

Plaintiff,

**AFFIDAVIT OF
PAUL A. STEENSON
IN SUPPORT OF
DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT**

-against-

RELIANCE CONSTRUCTION OF CANADA
a/k/a Construction Reliance du Canada ltee;
RELIANCE CONSTRUCTION, LTD d/b/a
RCG GROUP, also known as RCG
CONSTRUCTION GROUP; and
STEVEN KAPLAN,

Defendants.

STATE OF NEW YORK     )
                                            ) ss:
COUNTY OF NEW YORK)

PAUL A. STEENSON, being duly sworn, deposes and says:

1. I am the former Chief Operating Officer of Reliance Construction Ltd. d/b/a RCG Group also known as Reliance Construction Group ("RCG"), one of the defendants in this action, and I have personal knowledge of the facts and circumstances of this matter.

2. I submit this affirmation in support of defendants' motion, pursuant to Rule 12(h)(3) and Rule 56 of the Federal Rules of Civil Procedure, for summary judgment and an Order dismissing this action against defendants on the ground that the Court

lacks subject matter jurisdiction over this case, i.e., complete diversity of citizenship between plaintiff and defendants does not exist.

3. Plaintiff Hughes Contracting Industries, Inc. ("plaintiff Hughes Contracting") commenced this action against defendants by the filing of the summons and complaint on November 19, 2008 (a copy of the summons and complaint is annexed hereto as Exhibit A).

4. Defendants served and filed an answer with affirmative defenses to the complaint on December 16, 2008 (a copy of the answer is annexed hereto as Exhibit B).

5. The complaint (Exhibit A, paragraph 1) alleges that plaintiff Hughes Contracting is "a New York Corporation…with its principal place of business located at 391 Saw Mill River Road, Yonkers, New York".

6. The complaint (paragraphs 2 and 3) further alleges as follows:

**2.** Defendant RELIANCE CONSTRUCTION LTD ["RELIANCE"], is a Delaware Corporation with its principal offices located in the State of New Jersey at 300 Interpace Parkway, Parsippany, New Jersey.

**3.** RELIANCE CONSTRUCTION LTD sometimes trades from its New Jersey Offices under the name RCG GROUP, also known as RCG CONSTRUCTION GROUP.

7. The complaint (paragraph 6) alleges that this Court has jurisdiction over this case for the following reason:

This Court's jurisdiction is based on 28 USC 1332, to wit, the plaintiff and the defendants are citizens and reside or maintain offices in different states.

8. Contrary to the jurisdictional allegations of plaintiff Hughes Contracting, at the time this action was commenced (November 19, 2008), RCG's principal place of business was located at 145 Palisade Street, Dobbs Ferry, New York 10522.

9. Thus, at the time this action was commenced (November 19, 2008), both plaintiff Hughes Contracting and defendant RCG were citizens of the State of New York and consequently this Court has no subject matter jurisdiction of this action since there is no diversity of citizenship between plaintiff Hughes Contracting and defendant RCG.

## RELEVANT FACTS AS TO RCG'S PRINCIPAL PLACE OF BUSINESS

10. Defendant Reliance Construction Ltd. (RCG) is a corporation formed and existing under the laws of the State of Delaware [see printout from the New York Department of State, Division of Corporations (Exhibit C) and printout from Delaware Department of State (Exhibit D)].

11. On August 9, 2005, the State of New Jersey authorized Reliance Construction Ltd. to conduct business under the name RCG Group Ltd. (see State of New Jersey, Department of Treasury, Certificate of Authority, annexed hereto as Exhibit E).

12. On or about June 15, 2007, Reliance Construction Ltd. (RCG) became authorized to conduct business in the State of New York (see Exhibit C).

13. In 2007, I was hired by RCG as the Chief Operating Officer ("COO").

14. RCG is a company which provides services as a construction manager and/or general contractor for construction projects.

15. From the time I was hired as the COO (2007) until May, 2008, the only office for the conduct of RCG's business was located at Morris Corporate Center One, 300 Interspace Parkway, Parsippany, New Jersey (except for construction-site field offices, which were all located in New York).

16. All business of RCG was conducted from its Parsippany, New Jersey office from 2007 to May, 2008.

17. In May, 2008, RCG closed its offices in Parsippany, New Jersey and opened up new offices located at 145 Palisade Street, Dobbs Ferry, New York 10522 (see Exhibit F: final invoice from Morris Corporate Center to RCG dated June 1, 2008, which evidences RCG's "Tenant Termination" of the Parsippany offices on May 21, 2008; see Exhibit G: Commercial Lease between RCG and Commerce And Industry LLC for premises located at Suite #334, 145 Palisade Street, Dobbs Ferry, New York 10522, executed on May 1, 2008 and commencing on May 1, 2008).

18. When RCG opened its new office in Dobbs Ferry, New York in May, 2008, that New York office was RCG's principal place of business.

19. When RCG opened its new office in Dobbs Ferry, New York in May, 2008, RCG did not have or maintain any offices in the State of New Jersey.

20. In fact, from May, 2008 to December, 2008, RCG's Dobbs Ferry, New York office was the only office from which RCG conducted its business operations (except for construction-site field offices, which were all located in New York).

21. In December, 2008, RCG ceased all business operations and closed its Dobbs Ferry office.

22. Thereafter, RCG established a post office box at P.O. Box 769, Summit, New Jersey 07902, for the receipt of mail.

23. In sum, when plaintiff Hughes Contracting (a New York corporation) commenced the present action against defendant RCG and others on November 19,

2008, RCG's principal place of business was located at 145 Palisade Street, Dobbs Ferry, New York.

24. Wherefore, it is respectfully requested that this Court grant defendants' motion pursuant to Rules 56 and 12(h)(3) of the Federal Rules of Civil Procedure and that this Court issue an Order dismissing plaintiff Hughes Contracting's complaint against defendants for lack of subject matter jurisdiction.

Paul A. Steenson

Sworn to before me this
15ᵗ day of April, 2009

NOTARY PUBLIC

GREGORY M. HARRIS
Notary Public, State of New York
No. 01HA6006388
Qualified in Kings County
Commission Expires May 4, 20 10

5

# EXHIBIT A

AO 440 (Rev 1/90) Summons in a Civil Action

# United States District Court

SOUTHERN DISTRICT

DISTRICT OF _____ NEW YORK

HUGHES CONTRACTING INDUSTRIES LTD.,

## SUMMONS IN A CIVIL ACTION

V.

RELIANCE CONSTRUCTION OF CANADA a/k/a Construction
Reliance du Canada ltee; RELIANCE CONSTRUCTION, LTD
d/b/a RCG GROUP, also known as RCG CONSTRUCTION
GROUP; and STEVEN KAPLAN

CASE NUMBER:

**08-CV 10075**

**JUDGE SAND**

TO: (Name and Address of Defendant)

3285 Boulevard Jean-Baptiste-Deschamps, Lachine H8T 3E4 and
300 Interpace Parkway, Parsippany, New Jersey

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court and serve upon

PLAINTIFF'S ATTORNEY (name and address)

GUTMAN & GUTMAN
33 Main Street
Port Washington, N.Y.
11050
(516) 944-0301

an answer to the complaint which is herewith served upon you, within _____30_____ days after service of
this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken
against you for the relief demanded in the complaint.

NOV 1 9 2008

J. MICHAEL McMAHON

CLERK                                                    DATE

_Catherine Lapolly_

BY DEPUTY CLERK



UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

HUGHES CONTRACTING INDUSTRIES LTD.,                    Civ Action No.
                                                       Date filed:

                        Plaintiff,

        - against -                                   **COMPLAINT**

RELIANCE CONSTRUCTION OF CANADA a/k/a Construction
Reliance du Canada ltee; RELIANCE CONSTRUCTION, LTD
d/b/a RCG GROUP, also known as RCG CONSTRUCTION
GROUP; and STEVEN KAPLAN

                        Defendants.

-------------------------------------------------------------X

Plaintiff **HUGHES CONTRACTING INDUSTRIES LTD.**, by its

attorneys, GUTMAN & GUTMAN, complaining of the defendants, respectfully alleges

upon information and belief as follows:

### JURISDICTION; VENUE; JURY DEMAND

1.      Plaintiff HUGHES CONTRACTING INDUSTRIES, LTD.

(hereinafter "HUGHES") is a New York corporation engaged in the business of

construction with its principal place of business located at 391 Saw Mill River Road,

Yonkers, New York 10701.

1

2.    Defendant RELIANCE CONSTRUCTION LTD ["RELIANCE"], is a Delaware Corporation with its principal offices located in the State of New Jersey at 300 Interpace Parkway, Parsippany, New Jersey.

3.    RELIANCE CONSTRUCTION LTD sometimes trades from its New Jersey Offices under the name RCG GROUP, also known as RCG CONSTRUCTION GROUP.

4.    Defendant RELIANCE CONSTRUCTION OF CANADA a/k/a Construction Reliance du Canada ltee maintains its offices at 3285, boulevard Jean Baptiste Deschamps, Lachine H8T 3E4 and 300 Interpace Parkway, Parsippany, New Jersey

5.    Defendant STEVEN KAPLAN is engaged in the business of residential and commercial construction and sometimes trades under the names RELAINCE CONSTRUCTION, LTD, and Reliance Construction Of Canada Ltd aka Construction Reliance du Canada ltee and maintains offices offices at 3285 boulevard Jean-Baptiste-Deschamps, Lachine H8T 3E4 and 300 Interpace Parkway, Parsippany, New Jersey.

6.    This Court's jurisdiction is based in 28 USC 1332, to wit, the plaintiff and the defendants are citizens and reside or maintain offices in different states

7.    Venue of this action in the Southern District Court in New York City is based upon the site of the work performed by plaintiff and the site of the request

2

by defendants that induced the plaintiff to perform the work that is the subject of this action.

      7.      Plaintiff demands a jury trial of six (6) jurors

## AS AND FOR A FIRST CAUSE OF ACTION IN QUANTUM MERUIT

      Plaintiff repeats and re-alleges the above allegations and alleges further:

      8.      EAST 51ST STREET DEVLOPMENT COMPANY, LLC; and EAST 51ST STREET ASSOCIATES, LLC (hereinafter referred to as "OWNER" or TWENTY-NINE") were and are at all times relevant to the claims made in this complaint the owner of the following described premises, and entered into contract[s] with defendants to improve the following described premises with the construction of a residential apartment building:

      Premises:   303 East 51st Street, New York, NY

              Block No. 1344  /     Lot No. 103

(hereinafter "the premises").

      9.      Between December 4, 2007 and March 20, 2007 defendants entered requested and importuned the plaintiff HUGHES to fabricate and furnish structural steel parts for the construction and the improvement of the premises for the fair and market value of $85,940.00.

      10.     Plaintiff HUGHES fabricated and furnished and said defendants had, received and approved all the work, labor and materials which they requested; and plaintiff's labor and materials were furnished with the consent of defendants and OWNER, and at the request and pursuant to the plans, specifications and request of

3

defendants; and the premises were improved and defendants benefited from the improvement of the premises wrought by the labor and materials furnished by the Plaintiff.

11.    Plaintiff HUGHES provided the structural steel and fully performed all labor and fabricated, and furnished all materials in accordance with defendants direction, the terms of the plans and specifications, in a good and workmanlike manner, and in accordance with applicable building codes and accepted industry standards.

12.    Defendants and OWNER accepted and approved all labor and materials furnished by Plaintiff HUGHES for the improvement of the respective premises.

13.    The fair and reasonable value of the materials and labor furnished and the materials fabricated and installed, and the value added to the premises by reason thereof is $85,940.00, of which defendants have failed, notwithstanding repeated requests, to pay the sum of $85,940.00.

21.    Defendants are therefore individually and jointly liable to plaintiff HUGHES in the sum of $85,940.00 with legal interest.

WHEREFORE, Plaintiff HUGHES CONTRACTING INDUSTRIES LTD., demands entry of a judgment against the defendants in the sum of $85,940.00 with legal interest together with reasonable attorneys fees and the costs and disbursements of this action.

4

Dated: Port Washington, New York
      November 17, 2008

Yours, etc.

**GUTMAN & GUTMAN**
*Attorneys for Plaintiff*
*HUGHES CONTRACTING INDUSTRIES LTD.,*

BY: _____
        S. MAC GUTMAN, ESQ. (5609)
33 Main Street
Port Washington, New York  11050
(516) 944-0401

5

# DECLARATION

The undersigned, under the penalties of perjury declares:

That he is **S. MAC GUTMAN**, the attorney of record herein admitted to the Bar of the UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK; that he has read the foregoing document; that he CERTIFIES that to his knowledge the contents thereof are true, except as to the matters therein stated to be alleged on information and belief, and as to those matters, he believes them to be true; that the grounds and sources of such belief are written statements, reports and memoranda in his file, as well as conferences had between him and persons familiar with the circumstances underlying the allegations contained in said paper; and that the reason this affirmation is not made by the party is that:

Dated:  Port Washington, New York
        November 17th 2008

_____

S. MAC GUTMAN (5609)

6

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

HUGHES CONTRACTING INDUSTRIES, INC.,

Civil Action No. 08 CIV 10075 (LBS)

                             Plaintiff,

**ANSWER**

        -against-

RELIANCE CONSTRUCTION OF CANADA
a/k/a Construction Reliance du Canada ltee;
RELIANCE CONSTRUCTION, LTD d/b/a
RCG GROUP, also known as RCG
CONSTRUCTION GROUP; and
STEVEN KAPLAN,

                             Defendants.

_____

Defendants, by their attorneys Greenberg, Trager & Herbst, LLP, hereby submit their Answer to the Complaint of plaintiff Hughes Contracting Industries Ltd. and allege as follows.

### JURISDICTION; VENUE; JURY DEMAND

1. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 1.

2. Defendants deny the allegations contained in paragraphs 2, 3, 4, 5, 6 and 7.

### AS AND FOR A FIRST CAUSE OF ACTION IN QUANTUM MERUIT

3. Defendants deny the allegations contained in paragraphs 8, 9, 10, 11, 12, 13 and "21".

## FIRST AFFIRMATIVE DEFENSE

4. This Court lacks subject matter jurisdiction over this case because there is no federal question and there is no complete diversity of citizenship between plaintiff and defendants. At the time plaintiff filed its complaint, defendant Reliance Construction Ltd. maintained its principal place of business at 145 Palisade Street, Dobbs Ferry, New York 10522 and plaintiff is a New York corporation with its principal place of business located at 391 Saw Mill River Road, Yonkers, New York 10701.

## SECOND AFFIRMATIVE DEFENSE

5. This Court lacks personal jurisdiction over the defendants.

## THIRD AFFIRMATIVE DEFENSE

6. Plaintiff's Complaint fails to state a cause of action against defendants upon which relief can be granted.

## FOURTH AFFIRMATIVE DEFENSE

7. The claims in plaintiff's Complaint are barred because any contract entered into with plaintiff with regard to the construction project alleged in the Complaint was as agent for East 51st Street Development Company, LLC (Owner) and plaintiff was fully aware that East 51st Street Development Company, LLC was responsible for any and all payments to plaintiff for any work performed by plaintiff on the Project.

## FIFTH AFFIRMATIVE DEFENSE

8. The claims in plaintiff's Complaint are barred because plaintiff did not substantially perform the contract and did not complete its work.

## SIXTH AFFIRMATIVE DEFENSE

9. The claims in plaintiff's Complaint are barred because of plaintiff's material breaches of the contract and failure to complete its work.

## SEVENTH AFFIRMATIVE DEFENSE

10. The claims in plaintiff's amended Complaint against RCG are barred due to plaintiff's negligence and plaintiff's culpable wrongful conduct.

## EIGHTH AFFIRMATIVE DEFENSE

11. The claims in plaintiff's Complaint are barred to the extent that plaintiff failed to mitigate any of its alleged damages.

## NINTH AFFIRMATIVE DEFENSE

12. The claims in plaintiff's Complaint are barred by defendant Reliance Construction Ltd.'s lawful and proper termination of the contract.

## TENTH AFFIRMATIVE DEFENSE

13. The claims in plaintiff's Complaint are barred to the extent that plaintiff lacks capacity and/or standing to maintain its claims in this action.

## ELEVENTH AFFIRMATIVE DEFENSE

14. Plaintiff's Complaint should be dismissed because plaintiff has failed to join an indispensable party to this action, i.e., East 51st Street Development Company, LLC.

## TWELFTH AFFIRMATIVE DEFENSE

15. The claims in plaintiff's Complaint are barred due to the fact that plaintiff was fully paid for its work on the construction project alleged in the Complaint.

## THIRTEENTH AFFIRMATIVE DEFENSE

16. The claims in plaintiff's Complaint are barred by the terms and conditions of the contract.

## FOURTEENTH AFFIRMATIVE DEFENSE

17. Defendants have and had no contractual or quasi-contractual relationship with plaintiff.

## FIFTEENTH AFFIRMATIVE DEFENSE

18. Any dealings that defendant Steven Kaplan had with plaintiff was as an officer and employee of Reliance Construction of Canada and thus plaintiff has no claim against Steven Kaplan individually.

## SIXTEENTH AFFIRMATIVE DEFENSE

19. The claims in plaintiff's Complaint are barred because none of the defendants received or derived any benefit from any work performed by plaintiff on the construction project alleged in the Complaint.

## SEVENTEENTH AFFIRMATIVE DEFENSE

20. Plaintiff failed to properly serve the defendants with the Summons and Complaint.

**WHEREFORE,** defendants demand judgment dismissing plaintiff's Complaint against defendants in its entirety with prejudice and for such other and further relief as the Court deems just and proper, including costs and attorneys' fees.

Dated: New York, New York
       December 16, 2008

GREENBERG, TRAGER & HERBST, LLP
Attorneys for Defendants
767 Third Avenue, 12th Floor
New York, New York 10017
212-688-1900

By: _____
       Richard J. Lambert (RL 7471)

To: S. Mac Gutman, Esq.
    GUTMAN & GUTMAN
    Attorneys for Plaintiff
    33 Main Street
    Port Washington, New York 11050
    516-944-0401

# EXHIBIT C

# NYS Department of State

## Division of Corporations

### Entity Information

Selected Entity Name: RELIANCE CONSTRUCTION LTD.

Selected Entity Status Information

**Current Entity Name:** RELIANCE CONSTRUCTION LTD.
**Initial DOS Filing Date:** JUNE 15, 2007
**County:** NEW YORK
**Jurisdiction:** DELAWARE
**Entity Type:** FOREIGN BUSINESS CORPORATION
**Current Entity Status:** ACTIVE

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**

CT CORPORATION SYSTEM
111 EIGHTH AVENUE
NEW YORK, NEW YORK, 10011

**Registered Agent**

NONE

NOTE: New York State does not issue organizational identification numbers.

<u>Search Results</u>          <u>New Search</u>

<u>Division of Corporations, State Records and UCC Home Page</u>    <u>NYS Department of State Home Page</u>

# EXHIBIT D

Division of Corporations - Online Services                                        Page 1 of 2

Delaware.gov | Text Only                              Governor | General Assembly | Courts | Elected Offici

WINTER IN DOVER | PHOTO

## Department of State: Division of Corporations

**HOME**
About Agency
Secretary's Letter
Newsroom
Frequent
Questions
Related Links
Contact Us
Office Location

**SERVICES**
Pay Taxes
File UCC's
Delaware Laws
Online
Name Reservation
Entity Search
Status
Validate
Certificate
Customer Service
Survey

**INFORMATION**
Corporate Forms
Corporate Fees
UCC Forms and
Fees
Taxes
Expedited
Services
Service of
Process
Registered Agents
Get Corporate
Status
Submitting a
Request  How to
Form a New
Business Entity
Certifications,
Apostilles &

Frequently Asked Questions   View Search Results

Entity Details

**THIS IS NOT A STATEMENT OF GOOD STANDIN(**

| | | Incorporation Date / Formation Date: | 07/11/1996 (mm/dd/yyyy) |
|---|---|---|---|
| File Number: | 2642687 | | |

Entity Name:      **RELIANCE CONSTRUCTION LTD.**

| Entity Kind: | **CORPORATION** | Entity Type: | **GENERAL** |
|---|---|---|---|
| Residency: | **DOMESTIC** | State: | **DE** |

### REGISTERED AGENT INFORMATION

| Name: | **THE CORPORATION TRUST COMPANY** | | |
|---|---|---|---|
| Address: | **CORPORATION TRUST CENTER 1209 ORANGE ** | | |
| City: | **WILMINGTON** | County: | **NEW CASTLE** |
| State: | **DE** | Postal Code: | **19801** |
| Phone: | **(302)658-7581** | | |

Additional Information is available for a fee. You can retrieve Status for a
more detailed information including current franchise tax assessment, cui
and more for a fee of $20.00.

Would you like ⦿ Status ◯ Status,Tax & History Information  [ Submit ]

[ Back to Entity Search ]

https://sos-res.state.de.us/tin/controller                              4/14/2009

# EXHIBIT E



STATE OF NEW JERSEY

DEPARTMENT OF TREASURY

CERTIFICATE OF AUTHORITY

RELIANCE CONSTRUCTION LTD.

*Doing Business As*

RCG GROUP LTD.

0100949932

I, the Treasurer of the State of New Jersey,
do hereby certify that the above-named
Foreign Corporation (DBA) organized under
the laws of Delaware, has complied with all
the requirements of Title 14A of the New
Jersey Statutes, and that the business or
activity of said Foreign Corporation (DBA)
to be carried on within the State of New Jersey
is such as may be lawfully carried on by a
Foreign Corporation (DBA) filed under the
laws of this State for similar business or activity.
The Certificate of Authority was duly filed
August 8th, 2005.



IN TESTIMONY WHEREOF, I have
hereunto set my hand and
affixed my Official Seal
at Trenton, this
9th day of August, 2005

John E McCormac, CPA

State Treasurer

# EXHIBIT F

MORRIS CORPORATE CENTER
300 INTERPACE PARKWAY
PARSIPPANY, NJ 07054
(973) 335-0311

RCG GROUP
R E C E I V E D
JUN 2 0 2008
By_____

06/01/2008

ACCOUNT NUMBER

RCG Group
Karl J Indivero
Morris Corporate Center
300 Interpace Parkway
Parsippany, NJ 07504

A370    033461    1

PARSIPPANY
820

MAKE CHECKS PAYABLE TO:   MORRIS CORP CENTER

BALANCE DUE          8,401.24

| Date | Code | Description | Charges | Payments | Amount Due |
|------|------|-------------|---------|----------|------------|
| 04/01/2008 | 142 | 2007 CAM  Reconciliation | 983.46 | 341.78 | 641.68 |
| 04/01/2008 | 414 | BILLED UTILITIES-OFFICE | 1,134.00 | 0.00 | 1,134.00 |
| 05/01/2008 | 111 | RENT-OFFICE | 10,017.00 | 0.00 | 10,017.00 |
| 05/01/2008 | 414 | BILLED UTILITIES-OFFICE | 1,134.00 | 0.00 | 1,134.00 |
| 05/10/2008 | 119 | LATE FEE | 500.85 | 0.00 | 500.85 |
| 05/12/2008 | 141 | April '08 CAM | 322.25 | 0.00 | 322.25 |
| 05/12/2008 | 141 | May '08 CAM | 322.25 | 0.00 | 322.25 |
| 05/21/2008 | 111 | Tenant Termination | -4,523.82 | 0.00 | -4,523.82 |
| 05/21/2008 | 119 | Tenant Termination | -500.00 | 0.00 | -500.00 |
| 05/21/2008 | 141 | Tenant Termination | -145.60 | 0.00 | -145.60 |
| 05/21/2008 | 414 | Tenant Termination | -512.11 | 0.00 | -512.11 |
| 06/01/2008 | 141 | ESCALATION-OFFICE | 10.74 | 0.00 | 10.74 |

CBRE-STM-002 (10-03)

06/01/2008

ACCOUNT NUMBER

Please send this portion of the statement with your remittance to:

RCG Group

A370    033461    1

MORRIS CORPORATE CENTER
MORRIS CORP CENTER
P.O. BOX 632839
CINCINNATI, OH  45263-2839

P.O. BOX 632839

| Current | 30 | 60 | 90 | 120 | BALANCE DUE |
|---------|-----|-----|-----|------|-------------|
| -4,525.44 | 11,151.00 | 1,775.68 | 0.00 | 0.00 | 8,401.24 |

# EXHIBIT G

## COMMERCIAL LEASE

This Lease is entered into by and between Commerce And Industry LLC, a limited liability company with an address of 145 Palisade St., Dobbs Ferry, NY 10522 as ("Landlord") and Reliance Construction Company Group, a company with an address of 300 Interpace Parkway Parsippany, NJ 07054as ("Tenant").

In consideration of the mutual covenants contained herein and other valuable consideration received, and with the intent to be legally bound, Landlord and Tenant agree as follows:

1. PREMISES. Landlord hereby leases to Tenant, and Tenant hereby leases from Landlord, the following premises: Suite #334 at 145 Palisades Street, Dobbs Ferry, NY 10522 (the "Premises"). Tenant shall also have the right to use the common areas which may be provided by Landlord for the common use of all tenants.

2. TERM. The term of this Lease will be for Two years commencing on May 01, 2008 and ending on April 30, 2010 (see paragraph #33).

3. RENT. Tenant agrees to pay to Landlord, without any deduction or set offs, monthly installments of $4,500.00 From May 01, 2008 to April 30, 2009 and $4,770.00 from May 01 ,2009 to April 30, 2010, in advance, on the first day of each month (except the first installment which is due upon the execution hereof). Rent shall be paid to Landlord at 145 Palisade St., Dobbs Ferry, NY 10522, or at such other address as Landlord may specify in writing to Tenant.

4. SECURITY DEPOSIT. Upon the execution of this Lease, Tenant shall pay to Landlord a security deposit in the amount of$9,540.00, so that landlord will hold two months security for the payment of rent and the faithful performance by Tenant of all of its obligations in this Lease. The security deposit may be used to reimburse Landlord for all costs and expenses incurred due to Tenant's breach of any covenant, term or condition of this Lease. Landlord may use the security deposit to repair any damage to the Premises caused by Tenant, and to clean the Premises upon termination of this Lease. The security deposit shall be held and applied as provided by the laws of New York. The security deposit may not be applied by Tenant to the payment of rent. If Tenant fully performs its obligation hereunder, the security deposit, or balance, shall promptly be returned to Tenant after the termination of this Lease.

5. UTILITIES. Tenant shall pay as additional rent for electric as per meter reading. Providing tenant is not in default, landlord shall, excepting on Sundays and Holidays, provide heat on business days from 8:00 A.M. to 6:00 P.M. Landlord shall not be liable for any loss or expense incurred by Tenant by reason of the interruption or failure of any utility or service if due to any cause beyond Landlord's control.

6. LATE CHARGES. If Tenant fails to pay any installment of rent or any other amount due hereunder within 7 days of the date the same is due, Tenant shall pay Landlord as additional rent, a late payment charge equal to 10 percent of the overdue amounts. (This is not intended to change the due date for payment of rent and or additional rent which is due on the first of each month).

7. USE. The Premises shall be used by Tenant solely for Office and for activities incidental thereto. Tenant may not use the Premises for any other purpose without obtaining the prior written consent of Landlord.

8. TENANT'S TAX OBLIGATION. As additional rent, Tenant shall pay to Landlord 2% percent of any increase in real estate taxes over and above the current base year (2007/2008 School & Village and 2008 County & Town).

9. LIABILITY INSURANCE. During the term of this Lease and any extension or renewal, Tenant shall maintain, at its sole expense, public liability and property damage insurance with respect to the Premises with such company as may be acceptable to Landlord. Such policy shall have limits for personal injury of

at least $500,000.00 with respect to one person, and at least $1,000,000.00 with respect to more than one person in any one occurrence, and at least $25,000.00 for property damage. Such policy shall name Tenant as the insured and Landlord as additional insured, as their interests may appear, and shall provide that the insurer may not change or cancel such insurance without giving 21 days prior written notice to Landlord. Tenant shall furnish Landlord with a copy of such policy or a certificate of insurance upon Landlord's request.

10. MAINTENANCE AND CONDITION. (a) Landlord shall maintain and repair the following: common areas, roof, plumbing, heating and external structure of the premises. Tenant shall maintain and repair all nonstructural items within the demised space including but not limited to the replacement of light bulbs and ballasts.

(b) Tenant acknowledges that it has examined the premises and shall receive it in broom clean condition from the landlord at the time of occupancy and is taking same in its "AS IS" condition. Tenant shall keep the same clean, safe and in as good order and repair as they were at the commencement of this Lease, ordinary wear and tear excepted. Tenant shall use all fixtures, appliances, and facilities in a reasonable manner. Tenant shall pay as additional rent a  sum of $150.00 per month for the use of our dumpster. Tenant agrees to maintain and repair the Premises in compliance with all laws, ordinances and regulations applicable to them. Tenant agrees to promptly give notice in writing to Landlord of any unsafe conditions in or about the premises.

11. TENANT'S IMPROVEMENTS. There are no alterations done by the landlord presently in the space. Tenant shall not paint or deface the Premises, or make any alterations, additions or improvements without on each occasion obtaining the prior written consent of Landlord, which consent shall not be unreasonably withheld  Unless otherwise agreed in writing, all alterations, additions and improvements shall become the property of Landlord and shall remain on the Premises at the expiration or termination of this Lease; provided, however, that Landlord, at its option, may require Tenant to remove any such alterations, additions or improvements, which tenant has made during tenants time of occupancy and restore the Premises to its former condition.

12. DISCHARGE OF LIENS. Tenant agrees to promptly pay its contractors and suppliers for all work performed and materials furnished to the Premises, if any. In the event any mechanic's or similar lien is filed on the Premises or building in which the Premises are located which is claimed to arise from Tenant's actions, Tenant shall, at its sole expense, discharge or bond against such lien within 10 days of notice from Landlord.

13. QUIET ENJOYMENT. By paying the rent and observing all the agreements, terms and conditions herein, Tenant shall peaceably and quietly have, hold and enjoy the Premises during the term of this Lease and any extension or renewal, subject to the provisions hereof.

14. ACCESS. Landlord and its agents may enter the Premises at all reasonable times and upon reasonable notice to Tenant to conduct inspections, make necessary or desired repairs or improvements, or to show the same to prospective tenants, buyers or lenders. Landlord may also enter the Premises when the same appear to be abandoned and for the purpose of placing signs offering the Premises for sale or rent. In an emergency, and as permitted by law, Landlord may enter the Premises without prior notice to Tenant.

15. COMPLIANCE WITH LAW. Tenant, at its sole expense, shall comply with all present and future laws, ordinances, regulations and requirements of any federal, state or local authority relating to Tenant's use of the Premises. Tenant shall not make or permit any waste on the Premises, or any nuisance or use which might interfere with the enjoyment of other tenants or persons in the general area of the Premises. Tenant shall not commit or permit any act or use of the Premises which may increase the fire hazard or the cost of fire or other insurance on the building in which the Premises is located, or cause the cancellation of such insurance. Tenant shall pay any additional insurance premiums resulting from Tenant's use of the Premises. Tenant shall obtain, at its sole expense, any licenses or permits which may be required for Tenant's use of the Premises.

16. ASSIGNMENT AND SUBLETTING. Tenant shall not assign, transfer or encumber this Lease, nor sublet all or any portion of the Premises, nor permit the occupation by others, without on each occasion obtaining the prior written consent of Landlord, which consent shall not be unreasonably withheld. Consent of the Landlord on any one occasion shall not be deemed a waiver of the necessity for consent on any other occasion. Notwithstanding any assignment or subletting, Tenant shall remain primarily liable for the payment of rent and the performance of all covenants, terms and conditions of this Lease. Any attempt to assign or sublet without Landlord's consent shall be void and shall entitle Landlord, at its option, to terminate this lease.

17. FIRE AND CASUALTY. This Lease will terminate upon a total destruction of the Premises or building containing the Premises due to fire or other casualty and rent will be apportioned as of such date. In the event the Premises or the building containing the Premises are damaged by fire and other casualty so as to render the Premises unsuitable for the use for which the same are leased, rent will be abated until Landlord shall have restored the same to substantially their former condition. Provided, however, that if Landlord elects not to repair such damage, or if such repairs shall not have been completed within 90 days, either party may terminate this Lease and rent will be apportioned as of the date of termination.

18. CONDEMNATION. If the entire building in which the Premises are located is acquired or condemned by the power of eminent domain by any public or other authority, then this Lease will terminate upon the date such taking becomes effective. Rent and other payments will be apportioned as of such a date. If any part of the Premises or building containing the Premises is so acquired or condemned so as to render the Premises unsuitable for the use for which the same are leased, then this Lease may be terminated by either party upon thirty days written notice to the other. Rent and other payments will be apportioned between the parties as of the date of termination. If this Lease is not so terminated, then rent and other payments will be abated according to the nature and extent of the area taken. All damages awarded for such taking shall belong to and be the exclusive property of Landlord. Tenant agrees to sign such further instruments of assignment as Landlord may reasonably request to accomplish the foregoing. Provided, however, that any damages awarded for moving expenses or Tenant's fixtures, improvements or equipment shall belong to Tenant.

19. LOSS OR DAMAGE. Landlord will not be liable for any loss, damage or theft of any property of Tenant or others kept or stored in or about the Premises. Tenant acknowledges that it is Tenant's responsibility to insure its own property and improvements.

20. INDEMNIFICATION. Tenant shall indemnify and hold Landlord harmless from any and all claims, loss, damages, liens, expenses, including reasonable attorney's fees, and liabilities of whatever nature, arising out of or relating to (i) any default by Tenant in the performance or observance of any covenant, term or condition of this Lease, (ii) loss or damage to any property or injury or death to Tenant or any person occurring on or about the Premises due to any cause other than Landlord's negligence, and (iii) Tenant's use and occupancy of the Premises.

21. DEFAULT. Tenant shall be in default of this Lease upon the occurrence of any one of the following events:

(a) failure to pay any installment of rent or any other amount required herein which shall continue for 5 days after same is due.

(b) failure to perform or observe any other covenant, term or condition of this Lease which shall not be corrected within 15 days after written notice from Landlord, or for such longer period as may be reasonably necessary to correct such default;

(c) failure to pay rent due to abandonment or cessation of business operations at the Premises by Tenant;

(d) any material misrepresentation or omission of or on behalf of Tenant made to Landlord in connection with this Lease;

(e) the taking of the leasehold created hereby on execution or by other process of law;

(f) insolvency or failure of Tenant or any guarantor to generally pay its debts as they become due;

(g) assignment for the benefit of creditors of, or appointment of a receiver or other officer for, all or any part or Tenant's or any guarantor's property; or

(h) adjudication of bankruptcy, or filing of a petition under any bankruptcy or debtor's relief law by or against Tenant or any guarantor.

22 REMEDIES OF LANDLORD. (a) Upon any default by Tenant, Landlord may, at its option, terminate this Lease and/or resume and/or legal proceedings in accordance with the laws of New York. Upon any such default, Landlord shall also have the right to enter upon the Premises or any part thereof, without demand or notice, and repossess the same and expel Tenant and any other occupants and their effects, either with or without terminating this Lease. Any entry may be with or without process of law, by force if necessary, or otherwise according to law. No entry shall subject Landlord to any liability for trespass or damages. Upon any entry or termination, Landlord agrees to use reasonable efforts to relet the Premises on Tenant's behalf or otherwise, for such term and rent as Landlord may determine. Landlord may at its own discretion discontinue any service provided to the tenant including but not limited to disconnecting the electricity with 15 days notice to the tenant. No act or failure to act by Landlord shall waive any remedies which Landlord may have for arrears of rent or breach of covenant or release Tenant from any liability whatsoever. Tenant shall receive notice from landlord for any such defaults, once tenant has received notice from the landlord tenant shall have 15 days to cure any such defaults except for payment of rent which is due on the first of each month.

(b) If after default in payment of rent or violation of any other provision of this lease, or upon the expiration of this lease, tenant moves out or is dispossessed and fails to remove any trade fixtures or other property prior to said default, removal, expiration of lease, or prior to the issuance of the final order or execution of the warrant, then and in that event, the said fixtures and property shall be deemed abandoned by tenant and shall become the property of the landlord.

(c) Upon such termination or entry as above, Tenant shall indemnify Landlord against all loss of rents and other amounts which Landlord may incur over the remainder of the term in addition to paying all overdue rent and other payments. At Landlord's election, Tenant shall pay to Landlord an amount equal to the excess of the rent and other payments hereunder for the remainder of the term over the fair rental value of the Premises over the same period. Tenant shall also pay to Landlord all costs and expenses incurred by Landlord by reason of Tenant's default including, without limitation, attorney's fees (minimum $500.00 first appearance and a minimum of $400.00 each appearance thereafter), costs of regaining possession and reletting the Premises, broker's fees, storage fees and repairing and cleaning costs.

23. NO WAIVER. The failure of Landlord or Tenant to require strict performance by the other of any covenant, term or condition of this Lease is not a waiver for the future of any breach of the same or any other covenant, term or condition herein. Landlord's acceptance of rent is not a waiver of any breach by Tenant.

24. REMEDIES CUMULATIVE. To the extent permitted by law, the rights and remedies of Landlord herein are cumulative, and the exercise of any one of them will not be deemed to be in exclusion of any other. The rights and remedies herein are in addition to any other rights and remedies available to Landlord at law or equity.

25. SUBORDINATION OF LEASE. This Lease is subject and subordinate to all present and future mortgages, trust deeds and other security instruments that may be placed on the building in which the Premises are located; provided that for so long as Tenant is not in default of this Lease, no foreclosure or similar proceeding will terminate this Lease or impair any of Tenant's rights. In the event of any such proceeding, Tenant shall attorn to the new owner and accept such successor as the new Landlord under this Lease. Although no further act by Tenant is necessary to accomplish the above, Tenant agrees to sign any other instruments evidencing this subordination and attornment as Landlord may reasonably request. Tenant also agrees to provide the Landlord with documents required by any organization (including banks or lending institutions) for the purpose of verifying all aspects of tenancy.

26. SURRENDER AND HOLDING OVER. No surrender of the Premises or this Lease shall be effective unless accepted in writing by Landlord. At the expiration or sooner termination of this Lease, Tenant will remove its effects and peaceably deliver possession of the Premises to Landlord in as good repair and condition as they were at the commencement of this Lease, ordinary wear and tear excepted. Any property left on the Premises after Tenant vacates or abandons the Premises shall be deemed abandoned and Landlord may remove, store and/or dispose of the same as it sees fit, subject to applicable law. If Tenant holds over beyond the expiration or termination of this Lease and rent is accepted by Landlord, a month to month tenancy only shall be created which will otherwise be governed by the terms and conditions of this Lease. Nothing in this section shall be construed as a consent to any holding over by Tenant.

27. LIMITED LIABILITY. It is expressly agreed that neither Landlord nor any individual, partner, shareholder or member comprising Landlord shall be personally liable under this Lease. In the event Landlord breaches any provision of this Lease, Tenant will look solely to the equity, if any, of Landlord in the building in which the Premises is located to satisfy its claims and remedies, and Landlord's liability shall not exceed such equity interest.

28. NOTICES. All notices and communications under this Lease shall be in writing and shall be deemed to be properly given when delivered personally or sent by certified mail, return receipt requested, to Landlord at 145 Palisade St., Dobbs Ferry, NY 10522, or to Tenant at 145 Palisade St., Dobbs Ferry, NY 10522, or to such other address as either party may specify in writing to the other.

29. ENTIRE AGREEMENT. The parties acknowledge that they have read and understand the terms of this Lease. This Lease contains the entire agreement and understanding between the parties regarding the Premises and is subject to no agreements, conditions or representations that are not expressly set forth herein. This Lease may only be amended in writing and signed by both Landlord and Tenant.

30. INVALID PROVISION. If any provision of this Lease shall be invalid or unenforceable, the remaining provisions shall remain in full force and effect.

31. CAPTIONS. The captions in this Lease are inserted only for convenience and in no way construe or interpret the provisions hereof or effect their scope or intent.

32. PARTIES BOUND. This Lease shall be binding upon and shall inure to the benefit of the parties and their respective heirs, legal representatives, successors and assigns. Provided, however, that if Landlord sells the Premises, Landlord shall be released from all liabilities under this Lease. The purchaser, as successor landlord, shall be deemed to have assumed all of the obligations and liabilities of

Landlord under this Lease. Provided, however, that if Landlord sells the building in which the Premises are located, Landlord shall be released from all liabilities under this Lease. The purchaser, as successor landlord, shall be deemed to have assumed all of the obligations and liabilities of Landlord under this Lease

33. Anything to the contrary herein notwithstanding, and providing the tenant is not in default of any covenants and conditions of this lease, tenant may terminate this lease to be effective as of April 30, 2009, upon 90-days prior written notice by certified mail to the landlord (on January 30, 2009). In the absence of any termination notice from the tenant, the lease shall continue in full force and effect until April 30, 2010 unless upon sooner termination by the landlord under paragraph #22 of the lease.

34. Landlord represents that the central air-conditioning unit in the space is in working condition and tenant agrees to maintain the same throughout the term of the lease.

35. RIDERS. The riders and exhibits, if any, attached hereto and initialed by the parties are made a part of this Lease. (none)

Executed on the ___1___ day of ___May___ 2008

LANDLORD

COMMERCE AND INDUSTRY LLC

Norman Bahary                President

Tenant

Reliance Construction Company

Paul A. Steenson

*[handwritten in left margin]* and ave no further obligation under this lease